### THE UNITED STATES DISTRICT COURT
### NORTHER DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Richard Montgomery, II, | ) | CASE NO.:  5:25-cv-00758-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **<u>ORDER</u>** |
| | ) | |
| City of Akron, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is Defendants' Motion for Judgment on the Pleadings. Doc. 4. Plaintiff Richard Montgomery, II, proceeding *pro se*, has opposed the motion. Doc. 5. Upon review, the Motion for Judgment on the Pleadings is GRANTED.

### I.  Background

Plaintiff brought suit against Defendants City of Akron, Akron City Council, and Margo Sommerville, in her official capacity as Council President. "to challenge the unconstitutional restriction on public comments at Akron City Council meetings." Plaintiff alleges that Rule 5.3 of the Rules of Procedure for Akron City Council "arbitrarily restricts speech, violating fundamental rights," and that "Plaintiff attempted to participate in council meetings and was denied due to this policy," which "cause[d] irreparable harm by suppressing the voices of concerned citizens." Doc. 1-1, PageID #6. Plaintiff asserts causes of action under the First Amendment of the U.S. Constitution, Article I, Section 11 of the Ohio Constitution, and the Ohio Open Meetings Act (R.C. 121.22). Doc. 1-1, PageID #6.

Defendants moved for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Doc. 4. Plaintiff filed a brief in opposition to the motion, Doc. 5, to which Defendants filed a reply brief in support of the motion. Doc. 6. The Court now reviews the parties' arguments.

## II.  Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion to dismiss. *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Accordingly, "all well-ple[d] material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). To survive a Rule 12(c) motion, the complaint must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). The court may consider "documents attached to the pleadings," documents "referred to in the pleadings and [] integral to the claims," and "matters of public record" without converting a motion for judgment on the pleadings into a motion for summary judgment. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

Because the standard for a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion, the court must consider the sufficiency of the complaint under the *Twombly-Iqbal* pleading standard. *See Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir.

2017). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the court must accept as true all well-pled factual allegations, it need not do the same for legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the well-pled factual allegations must "plausibly give rise to an entitlement to relief." *Id.* at 679. That plausibility standard is met if the pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Courts should liberally construe the pleadings and filings of *pro se* litigants. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations in a pro se complaint are held to "less stringent standards than formal pleadings drafted by lawyers."). However, a *pro se* complaint still must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed.Appx. 784, 786 (6th Cir. 2011).

### III. Analysis

The Akron City Council rule at issue is Rule 5.3. Doc. 1-1, PageID #8; Doc. 4, PageID #43. The rule regulates speech by non-council members and provides, in relevant part:

> A public comment period will be held at each regularly scheduled Council meeting, where up to ten (10) members of the public may address Council on matters within Council's authority. No member of the public shall be permitted to address Council during the public comment period more than once every 30 days.

Doc. 1-1, PageID #19.

There is no dispute between the parties that Akron City Council denied Plaintiff his request to speak on January 27, 2025, pursuant to Rule 5.3. *See* Doc. 1-1, PageID #8; Doc. 4, PageID #43, 44. The key issue in the review of Defendants' motion is whether

3

the denial of Plaintiff's request pursuant to Rule 5.3 would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Under that standard, the Court evaluates each of Plaintiff's causes of action.

### A. The U.S. Constitution and the Ohio Constitution

The First Amendment of the U.S. Constitution states that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. The amendment applies to state actors as well via the Fourteenth Amendment's incorporation doctrine. *See Moms for Liberty – Wilson Cnty., Tennessee v. Wilson Cnty. Bd. Of Educ.*, 2025 WL 2599923, *3 (6th Cir. Sept. 9, 2025); *Gitlow v. People of State of N.Y.*, 268 U.S. 652, 666 (1925) (incorporating the First Amendment). Article I, Section 11 of the Ohio Constitution similarly protects the freedom of speech, providing, "Every citizen may freely speak, write, and publish his sentiments on all subjects … and no law shall be passed to restrain or abridge the liberty of speech…." Ohio Const. Art. I, Sec. 11. Despite the slight difference in language, the Ohio Constitution's guarantee of free speech merits the same analysis as that of the First Amendment. *See Eastwood Mall, Inc. v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994) ("[T]he free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and [] the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution.").

Courts employ a three-part test to evaluate a free-speech claim under the First Amendment: "[F]irst, we determine whether the speech at issue is afforded constitutional protection; second, we examine the nature of the forum where the speech was made; and third, we assess whether the government's action in shutting off the speech was legitimate, in light of the applicable standard of review." *Bible Believers v. Wayne Cnty.,*

*Mich.*, 805 F.3d 228, 242 (6th Cir. 2015) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

### 1. The Constitutional Protection of Speech

"The First Amendment offers sweeping protection that allows all manner of speech to enter the marketplace of ideas." *Bible Believers*, 805 F.3d at 243. Such protection covers even speech or behavior considered appalling or distasteful to the vast majority of people. *See Texas v. Johnson*, 491 U.S. 397, 397 (1991) (protection for the political act of burning the U.S. flag); *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 43-44 (1977) (protection for Neo Nazis seeking to march with swastikas and to disseminate propaganda in a predominantly Jewish community); *Snyder v. Phelps*, 562 U.S. 443, 454-56 (2011) (protection for the Westboro Baptist Church's peaceful protest at a military funeral). However, there exist certain categories of speech that receive either lesser protection or no protection under the First Amendment. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562-63 (1980) (lesser protection for commercial speech); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (lesser protection for defamation of public officials); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (no protection for speech inciting or producing imminent lawless action); *Miller v. California*, 413 U.S. 15, 23 (1973) (no protection for obscenity). Neither in the Complaint nor in the attached exhibits did Plaintiff describe the content of the speech that he intended to make at the Akron City Council meeting on January 27, 2025. *See* Doc. 1-1, PageID #5-8. However, because the circumstances suggest that the speech most likely would not have fallen into one of the lesser-protected or unprotected

categories, the Court will assume that the speech is fully protected going forward in its analysis.

### 2. The Public Forum

Though the speech is fully protected, the exact amount of protection it receives and the corresponding required governmental interest depend on the type of public forum in which the speech occurs or would occur. *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021). A public forum can be one of three categories: traditional, designated, or limited. *Pleasant Grove City v. Summum*, 555 U.S. 460, 469-70 (2009). Traditional public forums are places like public streets or parks "which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.* at 469 (internal quotation omitted). Designated public forums are created when the government "opens a piece of public property to the public at large, treating [it] as if it were a traditional public forum." *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010). Limited public forums are also created by the government but are "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Summum*, 555 U.S. at 470 (internal citation omitted).

Plaintiff alleges that the site of Akron City Council meetings constitutes a limited public forum. Doc. 1-1, PageID #6. Plaintiff is partially correct. The Sixth Circuit has described city council meetings as a special combination of both designated public forums and limited public forums: "'designated' because the government has 'intentionally open[ed]' it 'for public discourse,' and 'limited' because 'the State is not required to … allow persons to engage in every type of speech' in the forum." *Youkhanna*

*v. City of Sterling Heights*, 934 F.3d 508, 519 (6th Cir. 2019) (quoting *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009)).

### 3. The Government's Restriction as Applied to the Forum

Within this hybrid forum, the rules regarding speech restrictions depend on whether the restrictions are content-based or content-neutral. *See id.* Content-based restrictions are permissible so long as they are "reasonable … but [the government] cannot engage in viewpoint discrimination." *Youkhanna*, 934 F.3d at 519. On the other hand, the government may also "regulate the time, place and manner of speech so long as the regulation is (1) 'content-neutral,' (2) 'narrowly tailored to serve a significant governmental interest' and (3) 'leave[s] open ample alternative channels for communication of the information.'" *Lowery*, 586 F.3d 427 at 432 (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 295 (1984)).

For the reasons that follow, the Court finds that Rule 5.3 is a constitutional time, place, and manner restriction.

### a. The Rule Is Content-Neutral

Rule 5.3 provides:

> A public comment period will be held at each regularly scheduled Council meeting, where up to ten (10) members of the public may address Council on matters within Council's authority. No member of the public shall be permitted to address Council during the public comment period more than once every 30 days.

Doc. 1-1, PageID #19. As is evident, the rule applies to all non-members of the council regardless of the type or content of their speech. It allows up to ten members of the public to address the Council and plainly states that "[n]o member" may do so more than once every 30 days during the public comment period. *Id.* It makes no reference to either favored or disfavored ideas or opinions. It is not a context-sensitive regulation, i.e., it

does not trigger based on the words that come out of the speaker's mouth. *Contra Youkhanna*, 934 F.3d at 519 (finding content-based restrictions in rules requiring "relevance" and forbidding "attacks on people and institutions"). The complaint fails to allege any conduct by Defendants that departed from the content-neutral nature of the rule.

Therefore, because any restriction on speech under this rule is "justified without reference to the content" of the speech, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984), it satisfies the first requirement of the time, place, and manner test.

### b. The Rule Is Narrowly Tailored to a Significant Governmental Interest

The government has a significant interest in the "[p]reservation of order in city council meetings to ensure that the meetings can be efficiently conducted." *Timmon v. Wood*, 316 F. App'x 364, 366 (6th Cir. 2007). Rule 5.3 appropriately falls under Section V of the Council's Rules, which is titled "Debate and Decorum," Doc. 1-1, PageID #18, because it encourages the participation of as many different voices as possible—within reasonable limits—so any interested non-members may have the opportunity to speak to the Council, and the Council can still address all the items on its agenda in an efficient, orderly fashion. *See Lowery*, 586 F.3d at 433 ("Unstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard.").

The other rules within this section similarly promote this interest: Rule 5.1 provides that "[t]he Presiding Officer shall preserve decorum and maintain order at all times"; Rule 5.4 forbids any member from "leav[ing] the Council floor while a meeting is in session without the permission of the Presiding Officer"; and Rule 5.5 prohibits "[t]he

use of profane or vulgar language, either by Council members or by any other person attending the Council meeting." Doc. 1-1, PageID #19-20; *see Murray v. City of New Buffalo*, 708 F.Supp.3d 1313, 1331 (W.D. Mich. 2023) ("The prohibitions on derogatory, disparaging, and disrespectful language are not based on the speech's content, but rather on a reasonable need for decorum in a meeting."). Rule 5.3 does not run afoul of permissible time, place, and manner restrictions like the courts in this Circuit have found in other cases. *See Coleman v. Ann Arbor Transp. Authority*, 904 F. Supp. 2d 670, 693, 696 (E.D. Mich. 2012) (transportation authority's policy restriction on advertising that "defames or is likely to hold up to scorn or ridicule a person or group of persons" failed time, place, and manner test because it was content-based, not content neutral); *XXL of Ohio, Inc. v. City of Broadview Heights*, 341 F. Supp. 2d 765, 792-95 (N.D. Ohio 2004) (sign ordinance restrictions failed time, place, and manner test because they were based on the content of messages and were not narrowly tailored to asserted interests of promoting traffic safety, improving aesthetics, and protecting property values and neighborhood character).

Though Plaintiff may believe the rule to be unduly restrictive, it is crucial to keep in mind that the rule "need not be the least restrictive or least intrusive means" of serving the government's interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). It is enough that the rule is "not substantially broader than necessary to achieve the government's interest." *Id.* at 800; *see Lowery*, 586 F.3d at 433 (school board policy prohibiting speech that is "repetitive," "harassing," or "frivolous" was narrowly tailored to "the board's interests in efficient and productive meetings"); *Oswald v. Lakota Loc. Sch. Bd.*, 744 F.Supp.3d 843, 859 (S.D. Ohio 2024) (school board policy requiring

speakers to direct their remarks to the "presiding officer" or board member leading the meeting was narrowly tailored to the interests of order, efficiency, and access). If Rule 5.3 forbade any non-member from speaking for more than 10 seconds at a time or more than once per calendar year, Plaintiff would have a better argument against the suitability of the restriction. Instead, Rule 5.3 puts reasonable limitations on the speaking opportunities for non-members of the Council for the sake of proper debate and decorum.

Ostensibly, the general purpose of opening up the Akron City Council meetings is to provide transparency to the Council's handling of local concerns and to allow members of the public to meaningfully participate in the proceedings. Rule 5.3 does just that, and so it satisfies the second requirement of the time, place, and manner test.

### c. The Rule Leaves Open Ample Alternative Channels of Communication

"An alternative channel of communication can be adequate even when the speaker is denied its best or favored means of communication." *Harrington v. City of Brentwood*, 726 F.3d 861, 865 (6th Cir. 2013) (citation omitted). "The key for purposes of the adequate-alternatives analysis is whether the proffered alternatives allow the speaker to reach its intended audience." *Id.* (citation omitted). Though addressing the Council at a public comment is perhaps the most direct way to express Plaintiff's views, it is not Plaintiff's only adequate means of communication. The Council hosts a website with a contact form in which a non-member may leave their name, email, address, and desired message, *see* Contact, Akron City Council, https://www.akroncitycouncil.org/contact (last visited Oct. 2, 2025), all Council representatives' public emails and phone numbers are also listed on the website, and representatives from each ward are accessible at separate ward-specific events. *See Ison*,

3 F.4th at 896 (school board members' publicly displayed email addresses and presence at other school functions were adequate alternative channels).

Because it does not close off ample alternative channels of communication, Rule 5.3 satisfies the third requirement of the time, place, and manner test, and by extension the entire test.

There can be little doubt that Plaintiff genuinely believes that his speech planned for the public comment on January 27, 2025, was important to the local political discourse. But while "[t]he First Amendment's protections reach their zenith for political speech," *Lichtenstein v. Hargett*, 83 F.4th 575, 583 (6th Cir. 2023) (internal quotations omitted), "[t]he First Amendment does not guarantee persons the right to communicate their views at all times or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). Rule 5.3 permissively regulates the time, place, and manner of Plaintiff's speech, and its constitutionality is assured.

### B. The Ohio Open Meetings Act (R.C. 121.22)

Ohio's Open Meetings Act, often referred to as the "Sunshine Law," *Radtke v. Chester Twp.*, 44 N.E.3d 295, 299 (Ohio Ct. App. 2015), instructs that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). A "public body" includes a "council … of any county, township, municipal corporation, school district, or other political subdivision or local public institution." R.C. 121.22(1)(a). "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body." R.C. 121.22(H). The Sunshine Law plainly covers the Akron City Council and its meetings.

Plaintiff alleges that Rule 5.3 violates the Sunshine Law because it "impairs public access to government meetings." Doc. 1-1, PageID #6. It does not.

While the Sunshine Law requires the government to ensure public access to government meetings, "there is nothing in the statute that requires that the public body permit a member of the public to speak at the meeting." *Wyse v. Rupp*, 1995 WL 547784, *4 (Ohio Ct. App. Sep. 15, 1995); *see also Black v. Mecca Twp. Bd. of Trs.*, 632 N.E.2d 923, 926 (Ohio Ct. App. 1993). To reiterate, Rule 5.3 limits the number of non-member speakers at a public comment to 10 and prohibits any non-member from speaking more than once every 30 days. Doc. 1-1, PageID #19. It says nothing about restricting access to meetings to a select special few or about allowing the Council to privately meet and conduct business in contravention of R.C. 121.22. Plaintiff has not alleged that Defendants have acted in any way to restrict public access to Council meetings in any cognizable manner.

Defendants' denial of Plaintiff's request to speak pursuant to Rule 5.3 can be easily distinguished from cases in which courts have found that the government violated the Sunshine Law. For example, in *Keystone Commt. v. Switzerland of Ohio Sch. Dist. Bd. of Edn.*, 67 N.E.3d 1 (Ohio Ct. App. 2016), an executive session was called during the Board's regular meeting so the Board could have "[c]onferences with its attorneys concerning disputes involving the Board that are the subject of pending or imminent court action." *Id.* at 11. Upon returning to the regular session, the Board voted immediately on two measures: a vote to rescind the previous resolution to close a high school and a second vote on a new resolution to close that same high school. *Id.* The appellate court affirmed that such an attempt to remedy a violation of the Open Meetings

12

Act "with an open vote that immediately followed presentations and discussions held behind closed doors in executive sessions is exactly the type of conduct the Act seeks to prohibit." *Id.*; *see also White v. King*, 60 N.E.3d 1234, 1240 (Ohio 2016) ("[S]erial e-mail communications by a majority of board members regarding a response to public criticism of the board may constitute a private, prearranged discussion of public business in violation of R.C. 121.22 if they meet the requirements of the statute.").

The chief purpose of the Sunshine Law "is to prevent … elected officials [from] meeting secretly to deliberate on public issues without accountability to the public." *State ex rel. Cincinnati Post v. Cincinnati*, 668 N.E.2d 903, 906 (Ohio 1996). Plaintiff's only factual allegation is that Rule 5.3 prevented him from speaking. Doc. 1-1, PageID #6. Plaintiff has made no allegation that the Council has conducted its meetings or communicated with each other regarding a matter of public concern behind closed doors. Without more, Plaintiff's claim of a violation of R.C. 121.22 must fail as a matter of law.

## IV. Conclusion

Even after construing all factual allegations in the Complaint in the light most favorable, Plaintiff's Complaint fails to plausibly allege facts indicating Defendants' violations of the U.S. Constitution, Article 1, Section 11 of the Ohio Constitution, and Ohio's Open Meetings Act. Therefore, Defendants' Motion for Judgment on the Pleadings is GRANTED.

IT IS SO ORDERED.


January 28, 2026                           */s/ Judge John R. Adams*
                                          JUDGE JOHN R. ADAMS
                                          UNITED STATES DISTRICT COURT